McELROY, DEUTSCH, MULVANEY & CARPENTER, LLP
88 Pine Street – 24th Floor
New York, New York 10005
(212) 483-9490
Attorneys for Plaintiff,
Colonial Surety Company

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| In Re: | : | Chapter 7 |
| Uanderson Benedetti and Luana C. Benedetti, | : | Case No. 14-23521 (RDD) |
| Colonial Surety Company, | : | |
| Plaintiff, | : | Adversary Proceeding No. |
| -against- | : | |
| Uanderson Benedetti and Luana C. Benedetti, | : | **COMPLAINT OF PLAINTIFF, COLONIAL SURETY COMPANY, TO DETERMINE DISCHARGABILITY OF DEBT** |
| Defendants. | : | |

Plaintiff, Colonial Surety Company (hereinafter "Surety" or "Colonial"), by and through its counsel, McElroy, Deutsch, Mulvaney & Carpenter, LLP, files this adversary complaint pursuant to 11 U.S.C. § 523(a)(4) against Defendants, Uanderson Benedetti and Luana C. Benedetti (hereinafter "Debtors" or "Defendants") and in support hereof alleges as follows, upon information and belief:

**Parties**

1.  Colonial is a foreign corporation authorized to do business in the State of New York, existing by the laws of the State of Pennsylvania, and with its principal place of business at 50 Chestnut Ridge Road, Montvale, New Jersey 07645-1814.

2.  Uanderson Benedetti is an individual residing at 275 Broadfield Road, New Rochelle, New York 10804.

3.  Luana C. Benedetti is an individual residing at 275 Broadfield Road, New Rochelle, New York 10804.

**Jurisdiction and Venue**

3.  This matter constitutes an adversary proceeding pursuant to Federal Bankruptcy Rule 7001 and is grounded upon the provisions of 11 U.S.C. § 105(a) and §523(a)(4).

4.  The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b) and venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

5.  This is a core proceeding in the Debtor's bankruptcy case pursuant to 28 U.S.C. §157(b)(2)(1).

**Background**

6.  On or about October 30, 2014, the above-referenced Defendants filed a voluntary petition for relief under Chapter 7 of Title 11 of the United States Bankruptcy Code.

7.  Debtors failed to use statutory and/or contractual trust funds to pay labor and material suppliers on public works construction projects in the State of New York.

8.  To induce Colonial to issue various performance and payment bonds on behalf of Michaelangelo Pavers Unlimited, Inc. ("Michaelangelo"), Debtors executed a General Indemnity

Agreement (the "Indemnity Agreement"). A true and accurate copy of the Indemnity Agreement is attached hereto as **Exhibit A**.

### The Trust

9. Pursuant to the Indemnity Agreement, Debtors agreed, among other things, to hold funds in trust for the payment of obligations to subcontractors and/or materialmen, and to indemnify Colonial against all losses and costs incurred in connection with Colonial's issuance of surety bonds on behalf of the named principals. Paragraph 8.B of the Indemnity Agreement specifically provides:

> As security for the performance of all of the provisions of this Agreement each Indemnitor hereby agrees that all monies due or to become due [Michaelangelo] under any Contract are trust funds, whether in possession of [Michaelangelo] or otherwise, for the benefit of and payment of [Michaelangelo's] obligations for labor, materials and supplies furnished in performance of such Contract for which [Colonial] would or could be liable under any Bond for such Contract. If [Colonial] discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

(See Exhibit A, ¶ 8.B). Pursuant to the Indemnity Agreement, all of the funds paid to the Debtors or any of the entities controlled by the Debtors under the construction contracts bonded by Colonial constitute the trust *res* (the "trust funds").

10. Pursuant to the Indemnity Agreement, Colonial is specifically designated as the beneficiary of said trust.

11. As trustee of the trust, the Debtors have certain fiduciary obligations to Colonial, as beneficiary, under the Indemnity Agreement.

12. The Debtors, and the entities controlled by the Debtors, received contract funds in connection with the bonded projects, which funds were to be held in trust pursuant to the terms of the Indemnity Agreement.

13. Debtors committed a defalcation of trust funds, as Debtors possessed actual knowledge and/or consciously disregarded a substantial and unjustifiable risk that the trust funds were used for purposes unrelated to the contracts bonded by Colonial, including, among other things, the payment of general operating expenses of companies controlled by the Debtors for other projects, and/or other debts of Debtors and Debtors' companies. The foregoing conduct constitutes a diversion of trust funds and is expressly prohibited by the Indemnity Agreement.

14. Debtors, and companies controlled by the Debtors, failed to keep accurate, separate books and records for funds received and payments made in connection with each of the contracts bonded by Colonial and for any other contract to which Debtors were a party.

15. 11 U.S.C. § 523(a)(4) of the Bankruptcy Code provides, in relevant part, that a discharge of a debtor under the Code does not discharge an individual debtor from any debt for defalcation while acting in a fiduciary capacity.

16. Debtors, in their capacity as trustees, breached their fiduciary obligations to Colonial by failing to: (1) hold the trust funds in separate bank accounts; (2) properly account for the trust funds; (3) deliver the trust funds to certain labor and material suppliers that performed work or provided supplies to contracts bonded by Colonial as required by the Indemnity Agreement.

17. Debtors also failed to fully discharge their obligations under the bonds issued by Colonial, including, without limitation, their failure to segregate properly, account for and disburse the trust funds.

18. As a result of Debtors' failure to segregate properly, account for and disburse the trust funds, unpaid laborers, subcontractors and suppliers sought recovery from Colonial in accordance with the terms of the bonds.

19. Pursuant to its obligations under the bonds, Colonial sustained losses and expenses as the result of claims received under the bonds, including payments made to unpaid laborers, subcontractors and material suppliers. Additionally, Colonial faces additional contingent exposure under the bonds.

**Count I**
**Violation of Contractual Trust Fund Obligations**

20. Colonial repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

21. All of the bonded contracts' funds are and were contractual trust funds. Paragraph 8.B of the Indemnity Agreement provides:

> As security for the performance of all of the provisions of this Agreement each Indemnitor hereby agrees that all monies due or to become due [Michaelangelo] under any Contract are trust funds, whether in possession of [Michaelangelo] or otherwise, for the benefit of and payment of [Michaelangelo's] obligations for labor, materials and supplies furnished in performance of such Contract for which [Colonial] would or could be liable under any Bond for such Contract. If [Colonial] discharges any such obligation, it shall be entitled to assert the claim of such person to the trust funds.

22. Debtors were trustees and/or administrators of Michaelangelo's contractual trust funds, pursuant to the Indemnity Agreement.

23. Debtors, as trustees and/or administrators of contractual trust funds, possessed actual knowledge and/or consciously disregarded a substantial and unjustifiable risk that the trust funds were used for purposes unrelated to the contracts bonded by Colonial, including, among other things, the payment of general operating expenses of companies controlled by the Debtors

for other projects, and/or other debts of Debtors and Debtors' companies, constituting a defalcation.

24. As a direct and proximate result of Debtors' defalcation, Colonial has suffered damages.

**Count II**
**Violation of Statutory Trust Fund Obligations**

25. Colonial repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

26. All of the bonded contracts' funds are and were trust funds by operation of Article 3-A of the New York Lien Law. That law establishes a statutory trust, requiring Michaelangelo to pay all suppliers of labor and material on public projects before utilizing contract funds for other purposes.

27. Debtors were trustees and/or administrators of Michaelangelo's statutory trust funds, pursuant to the New York Lien Law.

28. Debtors, as trustees and/or administrators of statutory trust funds, possessed actual knowledge and/or consciously disregarded a substantial and unjustifiable risk that the trust funds were used for purposes unrelated to the payment of all suppliers of labor and material on public projects, including, among other things, the payment of general operating expenses of companies controlled by the Debtors for other projects, and/or other debts of Debtors and Debtors' companies, constituting a defalcation.

29. As a direct and proximate result of Debtors' defalcation, Colonial has suffered damages.

## Count III
## Embezzlement

30. Colonial repeats and re-avers each and every one of the allegations set forth in the preceding paragraphs of this Complaint with the same force and effect as if each were fully set forth at length herein.

31. Debtors received bonded contract proceeds that did not belong to them and that were entrusted to Debtors for payment of laborers and/or material suppliers on the bonded contract(s).

32. Debtors appropriated the bonded contract proceeds for use(s) other than that for which the funds were entrusted to Debtors, including, among other things, the payment of general operating expenses of companies controlled by the Debtors for other projects, and/or other debts of Debtors and Debtors' companies.

33. The circumstances surrounding Debtors' appropriation of the bonded contract proceeds are indicative of a fraud perpetuated by Debtors.

**Request for Judgment**

WHEREFORE, Plaintiff, Colonial Surety Company, respectfully requests that this Court enter a finding that the losses and expenses sustained by Colonial as the result of claims received under the bonds, including payments made to unpaid laborers, subcontractors and material suppliers, as well as any payments that may issue to any allegedly unpaid laborer, subcontractor and material supplier claimants that have or may file claims with Colonial, together with such other amounts which are or become due, be excepted from discharge under 11 U.S.C. § 523(a)(4) of the Bankruptcy Code, and that this Court grant such other and further relief as is appropriate.

Dated: January 20, 2015

McELROY, DEUTSCH, MULVANEY
& CARPENTER, LLP
Attorneys for Colonial Surety Company

By: /s/ Scott A. Levin
Scott A. Levin
88 Pine Street – 24th Floor
New York, New York 10005
(212) 483-9490